LACOMBE, Circuit Judge.
This court is always chary as to allowing intervention by persons interested in the funds of a receivership. It does not grant such relief when all the rights of the parties applying may be conserved without it. Intervention implies the making of a new and independent party to the litigation, with an independent attorney, and, in many cases, an independent counsel. If one creditor is allowed to intervene, there is no reason why another similarly situated should not be accorded the same privilege; and it would soon come to pass that the orderly conduct of the proceedings would be obstructed by the large number of parties to be formally notified of each step, and the expenses of administration, with allowances to attorneys and to counsel for the many separate creditors, would be unnecessarily increased. The several petitions for leave to intervene are therefore refused, and the motions denied. Inasmuch, however, as the argument has covered many subjects, and it has been made apparent that the procedure in this circuit in cases similar to the one at bar is apparently not familiar to all who have appeared in this case, it seems appropriate to file a brief memorandum upon the disposal of these motions.
The receivers of this corporation were not appointed under a regular creditors’ bill after judgment had been obtained against the defendant, and execution returned unsatisfied. The circumstances attending their appointment are as follows: E. S. Greeley & Co. was a Connecticut corporation. It had for some time transacted business in this state, and had considerable tangible property here, in the shape of a plant, a leased building, tools, raw material, manufactured and partly manufactured articles, and cash in bank. Possibly it also had property in other states, but that circumstance is not material. It became financially embarrassed to such an extent that, in the opinion of its officers and directors, it was practically insolvent, and, being of the opinion that a further effort to prosecute its business could only operate still more disastrously for all concerned, its officers and directors decided to wind up its affairs. Since it was a Connecticut corporation, the proper tribunal to take charge of such proceeding was the court of that state, *197 and to such tribunal application was made for the appointment of receivers. Such appointment was at once made, and, by the operation thereof, all of the assets of the corporation in the state of Connecticut passed to the receivers. Of course, the Connecticut appointment gave the receivers no authority to seize the assets of the corporation in this state. There were many creditors here who had dealt with the corporation, and given it credit, because of the large amount of tangible property which it was known to hold in this state. As soon as any of these creditors might be advised of the insolvency,- — and they would be so advised as soon as news of the appointment of receivers in Connecticut might reach here, — • they could secure themselves by at once beginning suit in the state courts, and levying attachments upon the property here. Under these circumstances, the Connecticut receivers applied to this court for an order appointing them receivers of this court in an action brought by a resident of this state against the corporation. It was apparent that, if the property were seized and sold under attachment, it would be disposed of at a ruinous sacrifice, leaving no balance available for the creditors who were not in a position to secure themselves by attachment; but it seemed highly probable that if receivers were appointed to take charge of the assets here, and dispose of them without undue haste, a sufficient sum would be realized to pay all the resident creditors in full, and leave a surplus over for transmission to the court which was winding up the corporation. At the time this appointment was applied for, it was shown that some, at least, of the resident creditors, wished to have it made. None of them have ever made any objection, and, upon the hearing of these motions, resident creditors to a considerable amount appeared, and expressed approval of the action of this court.
The questions raised upon these motions, and upon which petitioners wish to have a formal hearing and judicial determination, are these:
1. Creditors who are residents of Pennsylvania, or of states other than New York or Connecticut, insist that the New York assets which have been collected by the New York receivers should be distributed ratably among all the general creditors of the corporation, no matter in what state they may reside, nor where the contract upon which their claims arise may have been made. It has been the practice in this court in receiverships of this character to carefully provide for the protection of the creditors of the insolvent corporation who may reside within this jurisdiction. Inasmuch as this court, by seizing the property, has deprived the residents of this state of the remedies they would have possessed under state law, it would seem to be eminently just and equitable to afford them this protection. And that protection should be afforded by the federal courts in like circumstances was the opinion of the four justices of the supreme court who acted concurrently in dis-. posing of the questions which arose under the Northern Pacific Railroad receivership. Property in similar proceedings in this court has been collected, disposed of advantageously, the resident *198 creditors paid, and the surplus transmitted to the court of the state of which the corporation was a citizen, and where the receivers were originally appointed for the purpose of winding up its affairs. It is wholly unnecessary at this stage of the proceeding to enter into any discussion as to the propriety of this method of administration. Logically, it comes up for determination when distribution is about to be made. If any creditor, not a resident of this state, believes that he is entitled to participate in such distribution, he may submit proof of his claim to the receivers. If they reject the claim, as, under the practice prevailing here, they undoubtedly will, such creditor is entitled to have the propriety of such action passed upon by the master to whom, in the first instance, all disputed questions as to allowance or disallowance of claims are to be presented. If the master’s decision be adverse-to the creditor, he may review it upon exceptions to the report; and, if such exceptions be overruled by the circuit court; such determination is a final decree, from which he may appeal to the circuit court of appeals. In this way the creditor’s right to share in the distribution is judicially considered and decided as a question of right, unembarrassed by any exercise of discretion, as would be the case if the same question were presented upon a petition for intervention.
2. Counsel for nonresident creditors further insists that, in addition to the opportunity of formally presenting their claim to share in the proceeds, they are entitled to be put in a position where they may criticise or object to the claims of others, and may examine and dispute the propriety of the receivers’ conduct. Except in one respect, to be noted hereafter, the ordinary proceedings of the receivers may safely await the time when their accounts and transactions are sent' to the master for investigation. Under the practice in this circuit, the master gives notice of the opening of the hearing before him, touching the receivers’ administration, to all who have filed claims, or to their representatives, and abundant opportunity is afforded to all who are interested either as direct distributees of the New York assets or as distrib-utees of whatever surplus fund may be left for transmission to the court of original jurisdiction. The ordinary disbursements of ■eceivers in collecting and preserving a fund are of such a character as not to require any special investigation in advance of this one by the master, the bond in each case being made sufficiently large to insure a response to whatever sums may be sur-, charged upon the account. No distribution by the receivers is made until the master has investigated and made his report; and thus, upon his investigation, the creditor who has filed a claim, whéther it be allowed or disallowed, may have the opportunity of questioning the propriety of allowing any other claim or claims. Intervention, therefore, is unnecessary to protect any rights of creditors in this respect.
3. In this particular receivership there have been some extraordinary expenditures by the receivers. They have been allowed to proceed with the business so far as to complete the manufacture *199 oí articles which the corporation was under contract to furnish, thus in some instances making a slight profit on -the transaction, and at all events avoiding damages for breach of contract They have also been allowed to work up such raw material and partly manufactured materials as they had on hand into finished products, in the belief that they could thus be better disposed of. In a few instances they have been allowed to provide the raw material, and fill orders received from old customers of the corporation of undoubted solvency, in the belief that in that way the good will of the corporation, which seemed to be a valuable asset, might be preserved, and the opportunity of selling the entire plant, with such good will, at a favorable price, be greatly increased. This was done with the assent of most of the resident creditors; certainly with the expressed dissent of none. Inasmuch as some of the nonresident creditors now question the advisability of such action, it would be appropriate, in advance of the hearing before the master, to provide for a hearing by the court of the question whether such business should continue, all parties interested having the opportunity to be present and submit their views. In this particular case, however, such proceeding is not now necessary. The various items of work which have been undertaken from time to time by the receivers have been practically now completed. There is in contemplation no further effort to carry on the business. 'Satisfactory arrangements have been made whereby the premises now occupied will be vacated, certainly by the 1st of May, and probably by the 1st of April, and it is the expectation of the receivers to be able to wind up their business and present their accounts on or before that date.
4. Some of the nonresident creditor's insist that their position is different from that of others, by reason. of the circumstance that the contracts out of which their claims arose were made in this state, and, therefore, that they, equally with the resident creditors, were entitled to avail of process of the state courts by attachment, etc., at the moment when this court took the res into its possession. This same question has been presented recently to this court in two receiverships, but it was not decided, for the reason that no opposition was made to the claim of nonresident creditors thus situated. Objection was not made in these cases, for the reason that the New York assets were abundantly sufficient to pay all, claims filed here, including those of nonresidents holding Nev; York contracts, and leave a considerable surplus for transmission to the state of which the corporation was a citizen, and where its affairs were being wound up. This particular question is prematurely raised at this stage of the case. Creditors who believe that they are entitled to share in the distribution may file their claims with the receivers, and, whether the same be allowed or disallowed, they will have the same opportunity as all the other creditors to overhaul the receivers’ account, to present their own claims before the master, and to object to the allowance of any other, claims, as they may be advised.